IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:09-CR-9-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WINDELL NORWOOD HICKS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motions to suppress (DE ## 29, 33) filed March 9, 2009, and April 6, 2009. On May 14, 2009, United States Magistrate Judge William A. Webb conducted an evidentiary hearing to develop further the record on the issues presented in those motions. Magistrate Judge Webb issued a memorandum and recommendation ("M&R") on May 28, 2009, recommending that defendant's motions be denied. On June 8, 2009, defendant filed objections to the M&R, contending that both motions should be granted. After considering the M&R, parties' briefing, the testimony from the evidentiary hearing, and the DVD of the interview of defendant at the Wilmington Police Department, the court adopts the magistrate judge's recommendation and DENIES both of defendant's motions.

## BACKGROUND

On January 29, 2009, defendant was charged with one count of conspiracy to possess with intent to distribute and to distribute more than fifty (50) grams of cocaine base (crack), a quantity of cocaine, and more than one hundred (100) grams of heroin, in violation of 21 U.S.C. § 841(a)(1);

one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and 924.

Defendant's first suppression motion, filed March 9, 2009, concerns items seized from a search of defendant's home on February 22, 2008. The second suppression motion, filed April 6, 2009, concerns statements made by defendant at the Wilmington Police Department on February 22, 2008. The court referred these motions for M&R, along with several other motions no longer pending, on April 14, 2009. Before issuing M&R, the magistrate judge conducted an evidentiary hearing at which Detective Kenneth Becker of the Wilmington Police Department testified to the circumstances surrounding the search of defendant's home. The M&R contains a thorough and extensive recollection of the facts relevant to defendant's motions, to which defendant does not object. Accordingly, the court adopts the magistrate judge's statement of the facts as its own, and now turns to defendant's legal objections.

## DISCUSSION

### 1. Standard of Review

The court may "designate a magistrate judge to conduct hearings . . . and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a variety of motions. 28 U.S.C. § 636(b)(1)(A)-(B). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court is obligated to make *de novo* determinations of those portions of the M&R to which objections have been filed. Id.; see also Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

## 2. Analysis

### A. Motion to suppress items seized during search of defendant's residence

Defendant argued in his briefing and at hearing that evidence seized during the search of the locked bedroom in his house should be suppressed because (1) defendant's general consent to the search of his house did not extend to a locked room within the house, (2) defendant's consent to a search of his house so long as he was present did not extend to the search of a bedroom upstairs while defendant was in the living room downstairs, and, in the alternative, (3) defendant revoked his earlier consent by stating the room was his daughter's. The magistrate judge recommended the court reject all of these arguments. Defendant's objections focus on the first issue.

The relevant facts are as follows. Defendant was arrested on February 22, 2008, following two controlled drug purchases made at Ruth's Grocery Store. After Wilmington Police officers discovered marijuana and $2,548.00 in cash when conducting a search of defendant's vehicle, they asked for his consent to search his house. Defendant consented to the search of his residence as long as he was present. Defendant was placed in the living room as the officers conducted the search. Upstairs they found a locked door. Officers went downstairs and asked defendant about the locked door, requesting he identify the key that would open it on the key ring they had seized upon his arrest. Defendant's only response was to tell the officers that the room was his daughter's bedroom. Detective Becker began trying all the keys on the ring and eventually found the one that opened the door. Once inside, Becker found men's clothing, and he later reported the room smelled of men's cologne. The police also found a cloth bag with a loaded Rossi .38 caliber snub nose revolver and ammunition, and so they stopped the search as Detective Becker left the scene to apply for a search warrant.

3

A search conducted pursuant to consent is an exception to both the warrant and probable cause requirements that have been read into the Fourth Amendment of the United States Constitution. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). When an individual gives consent to search, he "may impose limits on the items or areas subject to the . . . search, just as he may refuse to allow any search whatsoever in the absence of a warrant." United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2004). While a suspect may also give general and unqualified consent to search a given area, this "by itself, would not likely permit officers to *break into* a locked container within the area being searched." Id. (emphasis in original).

The question of whether defendant's consent to search extended to the locked bedroom is governed by an "objectively reasonable" standard. See United States v. Neely, 564 F.3d 346, 350 (4th Cir. 2009). Thus, the question for the court here is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. (citing Florida v. Jimeno, 500 U.S. 248, 251 (2000)).

The court finds that defendant's consent to a search of the house extended to any locked rooms in the house. Defendant argues that this issue is governed by the Fourth Circuit's holding in Jones, and as the court there stated that general consent to search "by itself, would not likely permit officers to break into a locked container within the area being searched," his consent to search did not extend to the bedroom. See 356 F.3d at 534. While the court agrees with defendant that Jones is on point, a more comprehensive reading of the case reveals that it mandates the opposite conclusion.

In Jones, officers received consent from defendant to search a duffel bag, and upon finding a set of keys and a locked box inside, the officers opened the box to find a large quantity of

4

crack/cocaine. Id. at 532. Defendant in that case argued that his consent did not extend to the locked container. While the court stated that blanket consent to search a given area does not generally allow officers to *break into* a locked container within that area, it ruled the search under the particular circumstances was proper because it was objectively reasonable for the officer to believe the defendant's express consent to search the duffle bag extended to the locked box, as both the box and the keys were inside the bag. Id. at 534; cf. United States v.Neely, 564 F.3d 346, 351 (4th Cir. 2009) (suppressing evidence found in the search of the passenger compartment of a car where consent had only been given to search of the trunk as the item seized was not "physically within the location already consented to").

Thus, it would appear that the holding in Jones allows for the search of a locked room where defendant consented to a search of the house, and the keys to the room were within the house. The court need not resolve that issue here, however, because defendant knew the keys were already in police possession, not just within the area to be searched, at the time he gave consent. (Evid. Hearing Trans., pp. 16-17, 32.) Under these circumstances, it would certainly be objectively reasonable for the officers to believe the consent extended to the locked room. Accordingly, the court finds defendant's initial general consent extended to the locked bedroom.

Defendant does not take up either of the other two grounds for suppression in his objections. Nevertheless, out of an abundance of caution the court has reviewed those issues *de novo* and rejects defendant's arguments, for the same reasons provided in pages 9-13 of the M&R. Therefore, the court ADOPTS the M&R as it applies to defendant's first suppression motion and thus DENIES that motion.

5

B.  **Motion to suppress statements made during interview at police department**

Defendant argued in his briefing and at hearing that the statements he made during his interview with police officers should be suppressed because (1) the officers improperly pursued questioning after he told officers he did not want to waive his rights, (2) the execution of the waiver of rights form was not voluntary because the officers misled defendant about the consequences of executing the form, and (3) defendant's statement was not voluntary in light of the representations officers made to him to induce it. The magistrate judge recommended the court reject all of these arguments, and defendant objected on all three grounds.

Defendant first argues that the statement "I don't mind talking to you, but, I mean, I don't want to waive no rights" constitutes an invocation of his Miranda rights, and accordingly, all questioning by the officers should have stopped. Invocation of the Miranda right to counsel requires "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of the attorney." Davis v. United States, 512 U.S. 452, 459 (1994). In other words, the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. "Unless the suspect actually requests an attorney, questioning may continue." Id. at 461-62. Under this standard, the Fourth Circuit has held that the statement "I think I need a lawyer" fails to invoke the right to counsel. Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000). In the present case, defendant did not even mention an attorney, much less unequivocally request one.

Nor did defendant invoke his right to remain silent. The statement "I don't mind talking to you, but, I mean, I don't want to waive no rights" is in every sense an equivocal statement: it can reasonably be interpreted as either expressing a willingness to talk provided no rights are

6

permanently waived, or as expressing willingness to talk only if one does not have any right to remain silent. In Davis, the Court held that officers have no obligation to stop questioning unless the suspect's statement is an "unambiguous or unequivocal request for counsel." 512 U.S. at 461-62. As discussed on page 12 of the M&R, authority from several circuits indicates that the Davis standard requiring that a request be unequivocal applies to the invocation of the right to silence as well as invocation of the right to counsel. Accordingly, the court finds defendant invoked neither his right to counsel nor his right to silence.[1]

Defendant also objects to the M&R by arguing that neither his signing of the waiver of his Miranda rights nor his subsequent statement was voluntary, because each was induced by grossly misleading statements made by the officers. The relinquishment of one's Miranda rights is only valid if it is both knowing and "voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." United States v. Cristobal, 293 F.3d 134, 139 (4th Cir. 2002). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. at 140. To show that a statement is involuntary, it is not enough to show that there was coercive police activity; a statement is involuntary only if "the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.' "

---

[1] This conclusion is bolstered by the fact that defendant persisted in discussing the charges with the interviewing officers after being informed of his rights. (See, e.g., Tr. pp. 5-6 ("Becker: 'You can talk to me what you want to talk to me about. Okay? But you have to waive your right to counsel or I can't.' Mr. Hicks: 'What are you saying about the cocaine now? You're saying two counts of possession of cocaine?'").) This behavior is "inconsistent with [defendant's] present contention" that he invoked his Miranda rights. See Poyner v. Murray, 964 F.2d 1404, 1411 (4th Cir. 1992).

7

Id. The totality of the circumstances test for making this determination includes consideration of "the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id.

Defendant's argument that his waiver of rights was involuntary focuses on two statements by the interviewing officers. The first came when Detective Newton responded to Hicks's statement that he did not want to sign away his rights by saying, "You're not signing your rights away. You're signing – you're signing that you're willing to talk to us. It says that you may decide now or at later time to exercise the above rights and not make any statement." (Tr. p. 9.) The second came when Detective Newton began to say, in reference to the rights form, "This is just a," at which point defendant interrupted and said "technicality?"[2] (Id.) Detective Newton then stated, "we have to go through with this." (Id.)

Considering, as the court must, the totality of the circumstances presented, it does not find that defendant's will was overborne or his capacity for self-determination was critically impaired so as to render his waiver or statement involuntary. The court initially notes that Newton's statement "You're not signing your rights away" comes in the context of him informing defendant that he may still later invoke his Miranda rights even if he signs the waiver. This is consistent with his earlier representation to defendant, "if we start asking you questions and you want to stop, you can stop at any time." Thus, the reasonable reading of Newton's statement is that he was informing defendant that by signing the waiver form he was not precluding himself from later asserting his right to silence

---

[2]Although defendant's one word interruption of "technicality?" is not included in the transcript, the court's review of the video of the interview indicates that defendant clearly so stated at seven minutes and twenty seconds into the video. This is consistent with defendant's characterization of the interview in his objections. The court has confirmed that the other parts of the transcript that have been referenced in this order are consistent with the video of the interview.

8

or counsel. Further, there is nothing misleading about Newton's statement "we have to go through with this." If anything, that indicates to defendant that the waiver is important, as the officers are informing him they would not talk to him unless he signed it. The court does not, however, rest its finding on those portions of the interrogation alone; it also considers that defendant was a 59-year-old convicted felon with numerous experiences with law enforcement and <u>Miranda</u> warnings, that the officers repeatedly told defendant he did not have to talk to them if he did not want to, and that defendant also received <u>Miranda</u> warnings earlier that day after he was arrested for the crack cocaine sales, and marijuana was discovered in his car.[3]

For these reasons, the court upholds the magistrate judge's finding that both defendant's waiver of his rights and his subsequent statement were voluntary. Accordingly, the court ADOPTS the M&R as it applies to defendant's second suppression motion and thus DENIES that motion.

## CONCLUSION

Defendant's objections are overruled and upon *de novo* review, the court ADOPTS the M&R in its entirety. Thus, both of defendant's motions to suppress (DE ## 29, 33) are DENIED.

SO ORDERED, this the 6th day of July, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[3] The court notes that Detective Becker first testified about the prior <u>Miranda</u> warnings at the evidentiary hearing before the magistrate judge, and that there was no mention of them in his report of the incident. Nevertheless, as this is only one factor out of many that lead the court to its conclusion that defendant's will was not overborne, it is not unduly prejudicial to defendant to reference to it in this order. The court's finding as to voluntariness would not change if there were no earlier administered <u>Miranda</u> warnings.

9